STATE OF MISSOURI *ex rel.* FRANK MENOWN, Trustee, Respondent, v. JOHN W. BOEPPLER and DUGALD CRAWFORD, Appellants.

St. Louis Court of Appeals, October 29, 1895.

1. **Assignment for the Benefit of Creditors:** RIGHT OF ACTION ON BOND OF ASSIGNEE. The bond of an, assignee for the benefit of creditors can not be enforced by his successor in office, since the statute does not provide therefor. Accordingly, the right of action for a breach·of the bond can not be assigned by such successor, though he undertakes to do so by order of court.

2. ———: ———. When an action on the bond is based on the failure of the assignee to account for assets of the, estate, and is brought by one only of the creditors, the plaintiff is not entitled to recover, to the exclusion of the other creditors, the entire amount for which the assignee is accountable.

3. **Practice, Appellate:** PRESENTATION OF ENTIRE EVIDENCE. This court can not review an assignment of error that the evidence does not warrant the judgment of the trial court, unless the entire evidence in the cause is before it.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*W. B. Homer* for appellant, Dugald Crawford.

*M. Kinealy* and *James R. Kinealy* for respondent.

ROMBAUER, P. J.—The action is one by a creditor of the assignor against a statutory assignee and the surety on his official bond. The petition states that the relator is the assignor's creditor to the amount of $12,500, the claims of all other creditors amounting to $54,000. The petition then charges, among other things, that the assignee was guilty of a breach of his bond in collecting of the assets assigned to him $3,200 for which he failed to account, and prays judgment. Other breaches of the bond are likewise assigned, but, as these were determined by the trial court in favor of the appellants, they are not before us for review.

The answer of the defendants contains a general denial and the following affirmative defenses:

*First.* That Boeppler, the assignee, was removed by the court from his trust, and one Tiernan appointed as his successor. Tiernan was authorized by an order of the court in which the assignment was pending to sell the assets belonging to the assigned estate, including the liability of Boeppler and the sureties on his official bond, at public vendue, and did so sell the last named asset to one Taylor for $103, and that Taylor assigned it to the defendant Crawford, Boeppler's surety.

*Second.* That all matters alleged in the petition were fully inquired into by the court in which the assignment was pending, and the court, prior to the commencement of the present action, determined by its judgment that the sum of $2,857.55 was due from the defendants to the assignee Tiernan, and rendered judgment accordingly, which judgment the defendants paid.

The facts set up in these affirmative defenses are pleaded in bar of the present proceedings. The plain-

tiff demurred to the first special defense, and the court sustained the demurrer. To the second affirmative defense the plaintiff replied, averring that the alleged judgment now pleaded in bar was rendered in proceedings extraneous to the assignment record, and without any notice to the plaintiff, and is not binding upon the plaintiff. To this part of the reply the defendants demurred, and the court sustained their demurrer.

In this state of the pleadings the cause was sent to a referee for trial. The referee, after hearing evidence, made his report, which concludes as follows: "I, therefore, think judgment should be entered against the defendant and his sureties for $1,976, and so recommend, but with this proviso: It is apparent that Boeppler should receive credit for some of the amounts constituting this total, and the court in furtherance of justice should allow him to establish the propriety of such allowances, if he can. As the case is now submitted to me, he should be charged, as stated, with the sum of $1,976 under the second breach of the bond, and *I recommend judgment against the defendants for said amount of $1,976.*"

Exceptions were filed by the defendants to the referee's report, which the court overruled. The court thereupon, trying to make some equitable disposition of the case on the referee's recommendations, rendered judgment in favor of the plaintiff and against the defendants, assessing the damages at the sum of $216.95, with interest from date of referee's report.

The defendants moved for a new trial and in arrest of judgment, which motions the court overruled, and they appealed.

The error assigned by them is the sustaining of the plaintiff's demurrer to their first affirmative defense, and the action of the court on the referee's report.

Section 438 of the Revised Statutes of 1889 provides that any person injured by a breach of the condition of the assignee's bond may sue thereon in the name of the state to his use, but there is no provision authorizing the successor of an assignee to sue upon the bond of his predecessor. Section 54 of the administration law expressly provides that the succeeding administrator may sue for breaches of his predecessor's bond. In the range of judicial decisions we can find but one case discussing the proposition, whether, in the absence of a provision to that effect, the successor of a trustee can sue upon the bond of his predecessor, and that is the case of *Thompson v. Childress*, 1 Cooper (Tenn.), 369, where the learned chancellor answers the question in the negative. "Upon principle," says Chancellor COOPER, "it would seem clear that he could not. For his own commission is simply to take charge of the trust remaining unadministered, and his duty would necessarily be confined to those assets. He is not liable for the delinquencies of his predecessor, and can have no right of action based on that ground." It would probably be a salutary provision to invest a succeeding assignee with the power to sue for breaches of his predecessor's bond, but no provision has been made by law in this state, and, in the absence of such a provision, we must negative the power. If the right to bring such suit does not vest in him, we can not conceive how he could sell the right to others, and the fact that the court authorized him to do so can make no difference, since his right and powers are statutory and can not be enlarged by the court. It results from the foregoing that the demurrer to the first affirmative defense was properly sustained.

The cause was sent to a referee *to try all the issues*. Among the issues to be found by him was the amount of plaintiff's claim against the estate, and the aggre-

gate amount of the claims of other creditors.   An issue as to these facts was raised by a general denial in the answer.   Among these issues was, next, the one of former adjudication, which was raised by the defendants' second affirmative defense.   The referee made no finding on either of these issues.   He seems to have labored under the impression that the plaintiff, who claimed only a small share of the estate, was entitled to judgment for the entire amount of the shortage of the defaulting assignee, and that he, the referee, discharged his duties when he stated an account of that shortage, regardless of the amount of the plaintiff's claim, and regardless of the further question whether such claim was barred by a former adjudication.

It must be conceded that the referee's report is not in conformity with the order of the court, which directed him *to find on all the issues*.   The referee's suggestion, that the court should in furtherance of justice give the defendants an opportunity to establish the propriety of other credits than he had allowed to them, is, in view of the fact that he found a verdict against defendants for $1,976, and recommended a judgment accordingly, utterly meaningless.   The referee had evidently lost sight of the fact that this is a law case, and that the court was bound to adopt or reject his verdict as a whole, and that the court could not retry the facts of the case without first setting aside his finding and verdict.

Had proper exceptions been filed to the referee's report, it would have been the duty of the court to sustain them.   All the exceptions filed, however, but two which are hereinafter noted, are so vague and indefinite, and so devoid of pointing out any specific errors in the trial before the referee and in his finding, that the court was justified in overruling them.   *Wiggins Ferry Company v. Chicago & Alton Railway Company*, 73 Mo.

419; *Sugar Manufacturing Company v. Givens*, 35 Mo. App. 610.

The two exceptions which the court might have considered as not too vague are that the plaintiff has shown no capacity to sue, and that upon the pleadings and evidence the defendant was entitled to judgment. To enable us to determine whether these exceptions were properly overruled, the evidence should have been preserved in the transcript. The evidence, however, is preserved in part only, and hence we must assume in support of the judgment that there was evidence before the referee and the court tending to show that these two exceptions were not well taken.

Eliminating from the record the untenable plea that the plaintiff's claim was extinguished by the defendant's purchase of that claim, the residue of the record presents this remarkable state of facts. A referee in a law case makes an insufficient finding, but does make a verdict in favor of plaintiff for $1,976. The defendants file insufficient exceptions to the referee's report, and, upon the review which they seek here, do not produce the evidence which was before the referee and before the court in passing on these exceptions. The court, instead of rendering judgment against the defendants for $1,976, reconstructs the referee's finding in a manner unwarranted by law, and renders a judgment against the defendants for $216.95 only. Is there anything in the record to show that the defendants are aggrieved? Clearly not, since they have wholly failed to show that, upon the testimony before the referee and the court, such a judgment is without warrant. This they have failed to show, since they have not brought the testimony before us.

Thus it necessarily results that, although the record abounds in errors, there is nothing therein to show that any of the errors were prejudicial to the defendants, or

that they preserved any exceptions to the court's ruling which are entitled to consideration, and we are not justified in disturbing the judgment. R. S. 1889, sec. 2303. Judgment affirmed. All concur.